UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

EDDIE L. SWINSON,

      Plaintiff,

vs.                                                                                     Case No.  3:05-cv-1133-J-32MCR

JO ANNE B. BARNHART, Commissioner of
the Social Security Administration,

      Defendant.
_____/

**REPORT AND RECOMMENDATION**[1]

This cause is before the Court on Plaintiff's appeal of an administrative decision denying his application for Social Security benefits.  The Court has reviewed the record, the briefs and the applicable law.  For the reasons set forth herein, it is recommended the Commissioner's decision be **REVERSED** and **REMANDED** for proceedings not inconsistent with this opinion.

**I.     PROCEDURAL HISTORY**

Plaintiff protectively filed applications for a period of disability, disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") on April 17, 2002, alleging an inability to work since October 30, 2000.  (Tr. 128-30, 286-89).  The Social Security Administration ("SSA") denied these applications initially and on reconsideration.  (Tr. 75-79).  Plaintiff then requested and received a hearing before an Administrative Law

---

[1] Specific, written objections may be filed in accordance with 28 U.S.C. § 636 and Rule 6.02, Local Rules, United States District Court, Middle District of Florida, within ten (10) days after service of this document.  Failure to file timely objections shall bar the party from a de novo determination by a district judge and from attacking factual findings on appeal.

Judge (the "ALJ") on April 17, 2004. (Tr. 27-73). On September 21, 2004, the ALJ issued a decision finding Plaintiff was not disabled. (Tr. 12-26). On October 13, 2004, Plaintiff filed a Request for Review by the Appeals Council. (Tr. 10-11). The Appeals Council denied Plaintiff's Request for Review, thus making the ALJ's September 21, 2004 decision the final decision of the Commissioner. (Tr. 5-7). Plaintiff timely filed his Complaint in the U.S. District Court. (Doc. 1).

## II.    NATURE OF DISABILITY CLAIM

### A.    Basis of Claimed Disability

Plaintiff claims to be disabled since October 30, 2000, due to a shoulder and neck injury. (Tr. 128).

### B.    Summary of Evidence Before the ALJ

Plaintiff was 45 years of age on the date of the hearing. (Tr. 23). He has a high school education, but claims a difficulty with reading comprehension and simple arithmetic. (Tr. 31). Plaintiff has past relevant work experience as an industrial truck operator, a merchant patroller, a van driver, a boat rigger, an assembler and a pool construction worker. (Tr. 137). The record indicates Plaintiff suffered an injury to his shoulder and neck on October 30, 2000, while moving a bed under the employment of Florida Furniture. (Tr. 33-36, 126, 211). Plaintiff testified that he went to the emergency room on the day of his injury, but returned to work the following day. (Tr. 36). Plaintiff alleged constant pain, and, as a result, discontinued work a week after his injury. Id. Plaintiff has seen several treating physicians with regard to this injury. (Tr. 181-282).

Plaintiff went to the emergency room at Putnam Community Medical Center on November 2, 2000, complaining of pain, numbness, swelling, and bruising to his neck, right shoulder, and back as a result of the work-related injury. (Tr. 212-15). There, Plaintiff was diagnosed with a right AC joint sprain. Id. The emergency room referred Plaintiff to Stefan Stanescu, M.D., an orthopedic surgeon, who diagnosed Plaintiff with type I/II acromioclavicular separation and directed Plaintiff to "continue light duty with left hand use only" on November 21, 2000. (Tr. 186-87).

Plaintiff was examined by Dr. Stanescu on four more occasions due to continuing neck and shoulder pain. (Tr. 181-85). Upon physical examination of the Plaintiff on December 19, 2000, Dr. Stanescu recognized the severity of Plaintiff's pain had increased and significant pain was present on palpitation over the acromioclavicular joint. (Tr. 184). On February 6, 2001, Plaintiff reported to Dr. Stanescu that the pain was focused at the base of his neck in the trapezial area and toward the base of his neck on the right side. (Tr. 182). Dr. Stanescu noted "[i]nitially the patient was working light-duty, but he could not tolerate that and he was forced to abandon work completely." Id.

On February 16, 2001, Plaintiff was examined by Ketki Modi, D.O. (Tr. 260-63). During this examination, Plaintiff reported his pain was moderate to severe, ranging from 6-9 on a scale of 10. (Tr. 260). According to Plaintiff, his pain was worse with neck movements and changes in weather. Id. Dr. Modi reported that the MRI conducted on January 29, 2001, indicated Plaintiff had degenerative arthritic changes and moderate impingement syndrome. (Tr. 261).

On eight occasions between March 23, 2001, and February 15, 2002, Plaintiff

received intra articular right shoulder injections, trigger point, cervical epidural steroid, and facet point injections with fluoroscopy from Orlando Florete, Jr., M.D., of the Samuel B. Wells Surgicenter.  (Tr.  239-63).  On March 15, 2002, Dr.  Florete reported Plaintiff's cervical neck pain had not improved as a result of the injections.  (Tr.  238). Dr.  Florete suggested to Plaintiff that he inquire about vocational rehabilitation and a functional capacity evaluation.  Id.  As a result of persisting right shoulder pain, Plaintiff returned to the emergency room at Putnam Community Medical Center on July 22, 2001.  (Tr.  196-99).

In a statement of Plaintiff's condition, Perry J.  Cole, M.D. of the Institute of Pain Management, noted Plaintiff had severe spasticity of the right shoulder, arm, and neck, preventing him from doing any active motion especially above the head and shoulder. (Tr.  219).  However, Dr. Cole noted that Plaintiff could squat, walk on his heels and walk on his toes with difficulty.  Id.

Plaintiff visited the Institute of Pain Management again on August 14, 2002, and was examined by Raphael Reyes, P.A.,-C.  (Tr. 231-32).  At this time, Physician's Assistant Reyes noted Plaintiff "continue[d] to have severe muscle spasticty which prevent[ed] him from moving freely, especially with his right arm."  In addition, P.A. Reyes noted that Plaintiff's constant pain required the use of opiates and muscle relaxers, but there had been minimal results from such use.  Id.  P.A. Reyes administered Botulinum toxin ("Botox") injections in the areas associated with severe pain.  Id.  However, on September 11, 2002, P.A. Reyes concluded that the Botox injections had "only relieved [Plaintiff's] pain about 30% and he continue[d] to complain of inability to perform any tasks at home."  (Tr.  229-30).  Complaining of more severe

4

pain, Plaintiff saw P.A. Reyes again on January 2, 2003. For the first time, Plaintiff told P.A. Reyes that he was experiencing discoloration of his right arm when he perspired. (Tr. 276-77). P.A. Reyes reported a pain score of 10/10 and "severe tenderness at the left side musculature of the neck and at the shoulder, including the entire arm on the left side." Id.

On January 7, 2003, Dr. Florete determined Plaintiff had reached Maximum Medical Improvement ("MMI") because Plaintiff's pain had not improved after multiple injective therapies and maintenance medication. (Tr. 274-75). Dr. Florete concluded that Plaintiff had a total body impairment rating of 24%, 7% of which was attributable to Plaintiff's cervical spine problem and 18% was attributable to the acromioclavicular joint problem. Id. In a letter dated February 24, 2003, Dr. Florete stated that Plaintiff was "not able to work in a full-time capacity because of chronic pain syndrome arising from a disc herniation at C4-C5 associated with degeneration and joint disease which involves the C3-C4 and C5-C6 levels." (Tr. 282). In addition, Dr. Florete noted that Plaintiff was having major muscle spasticity to the shoulder, specifically after right shoulder acromioclavicular separation." Id. Dr. Florete concluded Plaintiff was in need of government insurance benefits as soon as possible. Id.

### C. Summary of the ALJ's Decision

A plaintiff is entitled to disability benefits when he is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months. 42 U.S.C. §§ 416(I), 423(d)(1)(A); 20 C.F.R. § 404.1505. The ALJ must follow five steps in evaluating a claim of disability. See 20

5

C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f). Plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146, 107 S.Ct. 2287 n.5 (1987).

In the instant case, the ALJ determined Plaintiff met the nondisability requirements of the Social Security Act and was insured for benefits up through the date of the decision. (Tr. 16). At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since his alleged onset date. Id. At steps two and three, the ALJ found Plaintiff had:

> chronic pain syndrome, disc herniation, degenerative joint disease and muscle spasticity of the right shoulder, impairments that are severe within the meaning of the Regulations but not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P of the Regulations No. 4.

(Tr. 19). The ALJ further determined Plaintiff retained the residual functional capacity

6

to:

> perform work activity at the light exertional level, with the following limitations: he can lift/carry no more than 20 pounds, occasionally, 10 pounds, frequently; he can sit/stand/walk for a normal 8 hour work day; he cannot climb ropes, ladders or scaffolds; he can only occasionally perform reaching functions with his right arm; he should avoid unusual workplace hazards.

Id. In making this determination, the ALJ found Plaintiff's testimony regarding his level of pain not fully credible. (Tr. 22).

At step four, the ALJ utilized the testimony of a vocational expert ("VE") during the hearing to determine if Plaintiff could perform any of his past relevant work. (Tr. 22-23). The VE explained Plaintiff would only be able to perform his past relevant work as a merchant patroller. (Tr. 23).

At step five, the ALJ determined that based on Plaintiff's age, educational background, work experience, and residual functional capacity, Plaintiff was "capable of making a successful adjustment to work that exists in significant numbers in the national economy." (Tr. 24). In making this determination, the ALJ utilized the testimony of the VE. (Tr. 20). Therefore, the ALJ found Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 20-21).

### III. ANALYSIS

#### A. The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971). The Commissioner's findings of fact

are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

    **B.**     **Issues on Appeal**

Plaintiff argues two issues on appeal. First, Plaintiff argues the ALJ erred by failing to properly evaluate Plaintiff's credibility. (Doc. 18, pp. 10-17). Additionally, Plaintiff argues the ALJ erred in failing to provide sufficient reasons why he rejected the opinion of Plaintiff's treating physician, Dr. Florete, regarding Plaintiff's ability to work. (Doc. 16).

The Commissioner responds that the ALJ properly considered both Plaintiff's credibility and treating physician's opinion. (Doc. 21).

**Whether the ALJ erred by failing to properly evaluate Plaintiff's credibility**.

Plaintiff takes issue with the ALJ's analysis of Plaintiff's subjective complaints regarding his level of pain.  Plaintiff testified his pain level is 6 to 9 out of 10 and he suffers from chronic and debilitating pain.  (Tr. 243, 245, 248).  Plaintiff also testified his pain prevents him from performing tasks of daily living.  (Tr. 229)

Pain is a non-exertional impairment.  Foote, 67 F.3d at 1559.  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain or other limitations alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote, 67 F.3d at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). Once a claimant establishes through objective medical evidence that an underlying medical condition exists that could reasonably be expected to produce pain, 20 C.F.R. sections 404.1529 and 416.929 provide that the Commissioner must consider evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms in deciding the issue of disability.  Foote, 67 F.3d at 1561.  Pain alone can be disabling, even when its existence is unsupported by objective evidence, Marbury v. Sullivan 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to

pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).

In this case, although the ALJ made reference to the Eleventh Circuit's pain standard, it appears he did not properly conduct the analysis for pain and subjective complaints.  Specifically, the ALJ found Plaintiff had severe impairments and that the objective medical evidence did not warrant "any more restrictive functional limitations." (Tr. 22).  "When the objective medical evidence does not confirm the severity of the alleged pain, the question becomes whether the underlying medical condition could reasonably be expected to give rise to the alleged pain."  Geiger v. Apfel, 2000 WL 381920 *7 (M.D. Fla. 2000).  The ALJ, however, did not make a specific finding regarding whether Plaintiff's symptoms were such that they could be reasonably expected from Plaintiff's medical condition.

When an ALJ decides not to credit a claimant's testimony about his subjective limitations or pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  Jones v. Department of Health and Human Services, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence).  Additionally, the Code of Federal Regulations sets forth seven factors that an ALJ should consider in addition to the objective medical evidence when assessing the credibility of the claimant's statements: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medications used to alleviate pain or other symptoms; (5) treatment other than medication, received for relief of pain or other symptoms; (6) any measures, other than treatment, used to relieve pain or other symptoms; and (7) other

factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3); see also Social Security Ruling 96-7p.  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.

Here, the ALJ did not examine these factors and only provided one reason to discredit Plaintiff's credibility – the fact that Plaintiff had not "sought help" for his pain in seven months.  (Tr. 22).  Initially, the ALJ found Plaintiff's testimony that he was unable to afford proper medical care for the alleged disabling conditions credible.  Id.  The ALJ then noted that the inability to afford medical care is a legitimate defense to non-compliance with medical treatment.  Id.  However, the ALJ stated he found it "difficult to believe" that an individual with pain as severe as Plaintiff's would not have sought help or that one of Plaintiff's doctors would not have directed Plaintiff to a source of free medical help.  Id.  Ultimately, the ALJ concluded that because Plaintiff did not seek free medical care, Plaintiff's "allegations of debilitating pain and disabling functional limitations [were] not fully credible."  Id.

It is not ordinarily proper for an ALJ to base a credibility assessment of an individual on that individual's failure to obtain medical treatment without first questioning him about it.  Social Security Ruling 96-7, holds in pertinent part:

> In general, a longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense and persistent pain or other symptoms for the purposes of judging the credibility of the individual's statements. . . .
>
> On the other hand, the individual's statements may be less

>credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure.  **However, the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment.  The adjudicator may need to recontact the individual or question the individual at the administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner.**  The explanations provided by the individual may provide insight into the individual's credibility. For example:
>
>\* The individual's daily activities may be structured so as to minimize symptoms to a tolerable level or eliminate them entirely, avoiding physical or mental stressors that would exacerbate the symptoms.  The individual may be living with the symptoms, seeing a medical source only as needed for periodic evaluation and renewal of medications.
>\* The individual's symptoms may not be severe enough to prompt the individual to seek ongoing medical attention or may be relieved with over-the-counter medications.
>\* The individual may not take prescription medication because the side effects are less tolerable than the symptoms.
>\* The individual may be unable to afford treatment and may not have access to free or low-cost medical services.
>\* The individual may have been advised by a medical source that there is no further, effective treatment that can be prescribed and undertaken that would benefit the individual.
>\* Medical treatment may be contrary to the teaching and tenets of the individual's religion.

S.S.R. 96-7p (emphasis added).  In the present case, the ALJ did not question Plaintiff about the reasons for his failure to obtain medical treatment.  Instead, he simply asked Plaintiff the last time he saw a physician.  (Tr. 44-45).  The ALJ did not follow-up and

12

ask Plaintiff why he did not seek any further treatment or whether he had ever been informed about free medical care.  The record reveals Plaintiff took numerous medications and underwent several procedures – including, but not limited to, Naprelan, Darvocet, Vioxx, Baclofen, Valium, Cortab, Duragesic, Roxicodone, epidural injections, facet injections, and Botox injections – to relieve his pain, but these were not successful.  (Tr.  188-218, 229-63).  It very well could be that Plaintiff believed there was nothing left to help him with his pain.  At the very least, the ALJ should have asked Plaintiff about his failure to obtain treatment for the past seven months.  As such, the undersigned finds the reason offered by the ALJ for discrediting Plaintiff's testimony is neither adequate nor supported by substantial evidence.  Accordingly, the Court will remand the case with instructions for the ALJ to re-evaluate Plaintiff's credibility and to continue with his analysis of Plaintiff's disability.

### Whether the ALJ erred by failing to provide sufficient reasons for rejecting the opinion of Plaintiff's treating physicians.

Plaintiff argues the ALJ failed to provide sufficient reasons for his decision to reject Dr. Florete's opinion regarding Plaintiff's ability to work.  (Doc. 14, p.10).  Plaintiff is correct that the opinion of a treating physician, such as Dr. Florete, "'must be given substantial or considerable weight unless 'good cause' is shown to the contrary.'" Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004) (citing, Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)).  The Eleventh Circuit has determined "good cause" exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's's own medical records." Phillips, 357 F.3d

at 1241. In any event, whenever an ALJ decides to disregard the opinion of a treating physician, he/she must clearly articulate the reasons for so doing. Id.

In this case, the ALJ specifically noted that he found the opinions of the treating physicians – Dr. Stanescu, Dr. Cole, and Dr. Florete – to be persuasive "with the exception of Dr. Florete's February 24, 2003 opinion wherein he stated that claimant was not capable of full-time work." (Tr. 20). The ALJ referred to a discrepancy between Dr. Florete's January 7, 2003 and February 24, 2003 opinions. Specifically, the ALJ noted that on January 7, 2003, Dr. Florete determined Plaintiff suffered from a 24% full body impairment and that this opinion was contradictory to his February 24, 2003 opinion that Plaintiff was incapable of full-time work. The undersigned is not certain as to how these specific opinions are contradictory and as such, finds the ALJ did not clearly articulate his reasons for rejecting Dr. Florete's February 24, 2003 opinion. Furthermore, other medical determinations in the record are consistent with Dr. Florete's February 24, 2003 opinion. For instance, on August 14, 2002, Dr. Cole noted Plaintiff's severe spasticity in his right shoulder, arm, and neck prevented him from *any* active motion, especially above the head and shoulder. (Tr. 219). In addition, on September 11, 2002, P.A. Reyes indicated Plaintiff's inability to perform *any* tasks at home. (Tr. 229-30).

Because the Court is remanding the matter for further consideration of Plaintiff's subjective complaints, the Court will likewise ask the ALJ to further explain his reasons for discrediting Dr. Florete's February 24, 2003 opinion that Plaintiff was incapable of full-time work. If the ALJ finds Dr. Florete's opinion contrary to the weight of the medical evidence, he should indicate so and provide a basis for his decision to discount such

evidence.

## V.  CONCLUSION

For the foregoing reasons, the undersigned finds the ALJ's decision is not supported by substantial evidence and is not based upon the proper legal standards. Accordingly, it is hereby

**RECOMMENDED**:

The Commissioner's decision be **REVERSED AND REMANDED**.  On remand, the Commissioner should be directed to further evaluate the evidence with respect to Plaintiff's allegations of pain and other limitations.  The ALJ should also reconsider Dr. Florete's February 24, 2003 statement and conduct any further proceedings deemed appropriate.

**DONE AND ENTERED** at Jacksonville, Florida, this  11th  day of October, 2006.

*Monte C. Richardson*

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record

The Honorable Timothy J. Corrigan,
    United States District Judge